## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**ERIN NICOLE WOOD,**

        **Plaintiff,**

**v.**                                                    **Case No:  6:12-cv-1883-Orl-22GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

Erin Nicole Wood (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1.  Claimant argues that the Administrative Law Judge (the "ALJ") erred by:  1) failing to demonstrate good cause, supported by substantial evidence, for rejecting or giving "little weight" to the opinions of Claimant's primary treating physician, Dr. Alyn L. Benezette, and the consultative examining physician, Dr. Alvan Barber (Doc. No. 18 at 10-17); 2) finding Claimant retained the residual functional capacity (the "RFC") for a full range of medium work without including specific functional limitations in the RFC (Doc. No. 18 at 8-10); 3) failing to find Claimant's cystitis and migraine headaches were severe impairments at step-two of the sequential evaluation process (Doc. No. 18 at 17-20); and 5) failing to provide substantial evidence supporting the ALJ's credibility finding (Doc. No. 18 at 24-27).  Claimant also argues that the ALJ and the Appeals Council erred by failing to properly consider and make specific findings regarding the side-effects of Claimant's medication, and how those side-effects affected her ability to work (Doc. No. 18 at 20-22); and the Appeals Council did not apply the correct legal standards to new

and material evidence submitted by Claimant after the ALJ's decision (Doc. No. 18 at 22-23).  For

the reasons set forth below, it is recommended that the Commissioner's final decision be

**REVERSED** and **REMANDED** for further proceedings.

I.      **ANALYSIS.**

       **A.  Opinion Evidence.**

           **1.  Dr. Benezette.**

Claimant argues that the ALJ failed to show good cause, supported by substantial evidence,

for rejecting the opinion of Claimant's treating physician, Dr. Alyn L. Benezette, D.O. Doc. No.

18 at 10-16.  The Commissioner contends that ALJ properly rejected Dr. Benezette's opinion

because "it was based primarily on [Claimant's] subjective complaints and the record does not

contain clinical and laboratory abnormalities that one would expect if [Claimant] were as limited

as alleged by the doctor."  Doc. No. 20 at 7.  Alternatively, the Commissioner maintains that any

error with respect to Dr. Benezette's opinions is harmless.  Doc. No. 20 at 10.

The ALJ's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C.

§ 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d

1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584

n.3 (11th Cir. 1991).

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011),

the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about

the nature and severity of a claimant's impairments, including symptoms, diagnosis, and

prognosis; what the claimant can still do despite his or her impairments; and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[1]

Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was

---

[1] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

inconsistent with the medical evidence renders review impossible and remand is required.").

It is not uncommon for this Court to be presented with generalized statements from an ALJ that a treating physician's opinion, which contains limitations beyond those found by the ALJ, is inconsistent with their own treatment notes, unsupported by the record as a whole, or fails to document the type of findings one would expect if the claimant were disabled. The Court has routinely rejected such generalized statements as conclusory and insufficient to meet the obligation to establish good cause for giving a treating physician's opinion less than substantial or considerable weight, as well as the obligation to <u>state with particularity the weight given to the physician's opinion and the reasons therefor</u>. *Winschel*, 631 F.3d 1178-79. When such generalized statements are unaccompanied by more specific statements and supporting record citations, the Court is unable to find that substantial weight supports the ALJ's decision. *See Id.*

Claimant was born on October 30, 1980. R. 89. She has a high school diploma, but has never had more than a part-time job. R. 22, 266. In 1996 and 1998, she was involved in two motor vehicle accidents in which she injured her neck and back. R. 219, 291. She alleges an onset of disability as of October 1, 2005. She was insured for benefits through March 31, 2008. R. 37, 39; Doc. No. 20 at 1.

Dr. Benezette was Claimant's primary treating neurologist. The record contains approximately thirty-five (35) of the doctor's treatment notes from 1998 through 2006. R. 235-361. According to the doctor's July 31, 1998 treatment note, Claimant's motor vehicle accident in 1998 exacerbated the injuries sustained in the 1996 accident. R. 291. Physical examination revealed negative straight leg testing, good range of motion in the cervical spine with mild to moderate muscle spasm and tenderness, and significant spasm and tenderness in the lumbar spine. R. 291-92. Dr. Benezette diagnosed Claimant with cervical/thoracic strain and lumbar

radiculopathy.   R. 292.   Dr. Benezette started Claimant on a physical therapy regimen and restricted her to sedentary activities for one month.   R. 292.   In September of 1998, Dr. Benezette continued to restrict Claimant to sedentary activities based upon physical examination results and Claimant's statement that performing even simple activities, like folding envelopes, aggravated her symptoms.   R. 290.   An August 31, 1999 magnetic resonance imaging ("MRI") revealed a "persistent central disc herniation" of the L5-S1, although Claimant's symptoms and range of motion had improved.   R. 289.   Dr. Benezette's impression was lumbar disc herniation.   R. 289.   Dr. Benezette cautioned Claimant about "prolonged sitting, stooping, squatting, bending, and lifting."   R. 289.   On July 2, 2001, Claimant reported that her symptoms were getting worse, with low back pain radiating into her left lower extremity, frequent and severe headaches, difficulty sitting or standing for any length of time, and difficulty lifting or carrying objects greater than twenty pounds.   R. 286.   Physical examination revealed good range of motion in the cervical spine, moderate spasm and tenderness in the lumbar spine, relatively normal strength testing, and decreased pinprick sensation in the left lower extremity.   R. 286.   Dr. Benezette ordered another MRI and assessed Claimant with a continuing cervical, thoracic, lumbar strain, and muscle spasm. R. 286.

The MRI revealed decreased cervical lordosis and a central disc protrusion of the L5-S1 unchanged from the previous MRI.   R. 284.   Physical examination showed mild spasm and tenderness in the cervical spine, tenderness to palpitation in the thoracic spine, and good range of motion in the lumbar spine.   R. 284.   Dr. Benezette ordered Claimant to continue massage therapy treatments.   On April 2, 2002, Dr. Benezette stated that as a result of injuries sustained in the 1996 and 1998 accidents, Claimant has a 14% permanent impairment of the body.   R. 281.   Dr. Benezette opined that Claimant is restricted to light activities and she should "refrain from any prolonged

sitting, standing, stooping, squatting, bending, lifting, or carrying." R. 281. Dr. Benezette further stated that Claimant will continue to require long-term use of medication to control muscle spasms, and full body massage to maintain her current level of functioning. R. 281.

From October 4, 2004 through July 5, 2006, Dr. Benezette repeatedly diagnosed Claimant with lumbar disc herniation, radiculopathy, facet arthropathy, myofasitis, cervical myofascitis, and migraine headaches. R. 236, 238, 241, 245, 246, 251, 254, 258, 260, 264, 266, 269. During that time, physical examinations continually showed: positive straight leg testing, mild to no spasms in the cervical spine, mild to moderate spasm and tenderness in the thoracic and lumbar spine, good to mild restricted range of motion in the cervical spine, mild to moderate restricted range of motion in the lumbar spine, antalgic gait, and normal strength. R. 235, 238, 241, 245, 246, 251, 254, 258, 260, 263, 266, 268. An MRI on 11/1/05 revealed a "broad base posterior disc herniation and associated radial tear at L5-S1," no significant spinal stenosis neural foraminal stenosis, and disc desiccation at L5-S1 with mild retrolisthesis on L5-S1. R. 260, 317. Dr. Benezette prescribed a T.E.N.s unit to treat Claimant's muscle spasms, pain and anti-inflammatory medication, physical therapy, and three separate series of epidural steroid injections, all with either no or only short-term relief of symptoms. R. 236, 239, 241, 244, 245, 247, 250, 252, 255, 257, 259, 261, 264, 267, 269. In his February 1, 24, and May 24, 2006, treatment notes, which include a description of the Claimant's symptoms, physical examination, and diagnoses, Dr. Benezette opines that Claimant is restricted to sedentary activities. R. 239, 241, 247. Ultimately, Dr. Benezette referred Claimant to a neurosurgeon, who declined to treat Claimant. R. 239, 314. It appears that Dr. Benezette then referred Claimant to a second neurosurgeon, but there is nothing in the record indicating that Claimant was seen or evaluated by a second neurosurgeon. R. 314.

In the decision, ALJ Gerald F. Murray found, at step-two of the sequential evaluation process, that Claimant has a severe impairment of degenerative disc disease with low back pain. R. 39. The ALJ determined that Claimant has the RFC to perform the full range of medium work, which is the ability to lift no more than 50 pounds occasionally and 25 pounds frequently. R. 40; 20 C.F.R. § 404.1567(c). In making that finding, the ALJ stated the following about Dr. Benezette's treatment records:

> Although the record confirms the existence of claimant's back impairment, the record does not support a resulting inability to work. The claimant was involved in a motor vehicle accident in 1998. Thereafter, Claimant presented to [Dr. Benezette] in 2006 for treatment of her pain complaints. She was prescribed Lortab and encouraged to perform light stretching, range of motion, and walking on a daily basis as tolerated. The claimant underwent lumbar epidural steroid injections for pain relief in 2006 as well, and she was restricted to sedentary activities during her treatment. . . . However, during the hearing, the claimant testified that she has not received recent treatment for her pain complaints due to financial constraint. . . .
>
> An MRI of the lumbar spine in November 2005 indicated a broad based posterior disc herniation and associated radial tear at L5-S1. There was no significant spinal stenosis or neural foraminal stenosis at L5-S1; however, there was disc desiccation at L5-S1 with mild retrolisthesis of L5 on S1. Thereafter, on May 9, 2006, a neurosurgeon reviewed the claimant's chart and stated that she had no need for surgery.

R. 40-41. With respect to Dr. Benezette's opinions, the ALJ stated:

> The [ALJ] has also considered Dr. Benezette's opinion, restricting the claimant to sedentary activities in 2006 during her treatment. However, there is a concern that the doctor relied too heavily on the claimant's subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what the claimant reported. However, the medical evidence of record does not contain the type of significant clinical and laboratory abnormalities one would expect if the claimant were as limited as alleged by the doctor.

R. 42 (emphasis added).

The ALJ's handling of Dr. Benezette's opinions requires reversal. First, the ALJ failed to state with particularity the weight given to Dr. Benezette's opinions. *See* R. 42; *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) ("'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'")). Second, the ALJ failed to articulate any basis or cite to any evidence supporting the finding that Dr. Benezette relied too heavily on Claimant's subjective statements. R. 42. Third, the ALJ's statement that the record does not contain the type of significant and laboratory abnormalities one would expect if Claimant were as limited as Dr. Benezette's opinions alleged is simply too speculative to constitute good cause to reject the opinion.

The Commissioner argues that because the ALJ relied upon the VE's testimony to find, at step-four, that Claimant is capable of performing her past relevant work, which includes three jobs that were sedentary work, any error by the ALJ with respect to Dr. Benezette's opinions was harmless. Doc. No. 20 at 10. If, at step-four, substantial evidence supported the ALJ's finding that Claimant can perform her past relevant sedentary work, then the Commissioner would be correct that any error with respect to Dr. Benezette's opinions was harmless. *See* R. 42-43 (finding, in part, that Claimant can perform her past relevant, sedentary work as a telephone solicitor, data entry clerk, and secretary). However, the ALJ's findings at step-four are not supported by substantial evidence.

In determining whether a claimant's past work experience qualifies as past relevant work at step-four, Courts have "uniformly held that to qualify as past relevant work, the work must have been substantial gainful activity." *Childs v. Astrue*, 2008 WL 686160 at *4 (M.D. Fla. Mar. 10, 2008) (citing authority). "This follows because under the Act, 'disability' is defined as the

'inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment.'" *Id.* (citing 42 U.S.C. § 423(d)).   Substantial gainful activity is "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  The regulations provide that past relevant work is work performed in the past fifteen years that was substantial gainful activity and lasted long enough for the claimant to learn to do it.  20 C.F.R. § 416.974.  The regulations also provide a chart of earnings to assist in determining whether a claimant's work constitutes substantial gainful activity.  *See* 20 C.F.R. § 416.974(b).  The chart provides that between January 1990 and June 1999, a claimant earning more than an average of $500.00 per month is engaging in substantial gainful activity, and, thereafter, a claimant must be earning an average of more than $700.00 per month.  *Id.*

In this case, as the ALJ noted at the hearing, all of Claimant's past work has been part time work.  R. 22.  In the decision, the ALJ stated that the "claimant's certified earnings record shows reported earnings totaling $5,141.00 in 2006, $905.00 in 2008, and $2,065.00 in 2009. Accordingly, the [ALJ] finds for purposes of this decision that the claimant has not engaged in substantial gainful activity since her alleged onset date." R. 39.  Moreover, the certified earnings record shows Claimant earned a total of $342.87 in 1998, $368.87 in 1999, $0.00 in 2000, $2,194.00 in 2001, $332.00 in 2002, $2,680.0 in 2003, $3,053.00 in 2004, and $2,491.00 in 2005. R. 96.  Under the regulations, Claimant never engaged in substantial gainful activity.  *See* R. 96; 20 C.F.R. § 416.974(b).  As such, none of Claimant's past work qualifies as past relevant work, and the ALJ's findings at step-four are not supported by substantial evidence.  *Compare* R. 39, 96 *with* 42-43.  Accordingly, the ALJ's errors with respect to Dr. Benezette's opinions are not harmless.

While the decision must be reversed and remanded for the above-stated errors, the court will briefly address the remaining issues.

### 2. Dr. Barber.

Claimant maintains that the ALJ erred by giving an unspecified portion of Dr. Barber's opinion "little weight." Doc. No. 18 at 16-17. On April 11, 2007, Claimant presented to Dr. Alvan Barber, M.D. for a consultative physical examination. R. 375-81. After conducting a physical examination (*see* R. 377), Dr. Barber's impressions were lumbar degenerative disc disease, herniated nucleus populous with right lower extremity radiculopathy with pain, and headache disorder. R. 377. Dr. Barber opined that:

> Physical examination reveals claimant could be limited in standing for long periods of time. Claimant could be limited in lifting and carrying heavy objects. Symptoms could limit the claimant to activities that require use of upper body movements and coordinated activities with hands.

R. 378. In the decision, the ALJ made the following findings:

> The [ALJ] has considered the opinion of the consultative examiner as well. The [ALJ] gives Dr. Barber's opinion great weight to the extent it is consistent with the assessed RFC [for medium level work]. However, to the extent that the opinion contains greater or additional restrictions than the assessed [RFC], the [ALJ] gives it little weight, as those restrictions are not consistent with the medical evidence of record or supported by the record as a whole.

R. 42. It is unclear from the above statement which portions of Dr. Barber's opinions the ALJ is giving great weight and which portions the ALJ is giving little weight. R. 42.

In *Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720 at *6 (M.D. Fla. Jan. 28, 2009), the Court held:

> When assessing the Plaintiff's impairments, the ALJ was required to make "specific and well-articulated findings . . ." [b]ecause an ALJ is not permitted to substitute his judgment for that of the medical experts, <u>the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.</u> Where an ALJ fails to sufficiently explain

how he reached his decision, the Court may not speculate.

*Id.* (emphasis added) (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).  Reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others.  *Id.* This reasoning applies in the present case.  *Id.*  Moreover, the ALJ's reasons (R. 42) for giving little weight to an unspecified portion of Dr. Barber's opinion are insufficient to show they are supported by substantial evidence.  *See Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how opinion was inconsistent with the medical evidence renders review impossible and remand is required.").  Accordingly, the ALJ's handling of Dr. Barber's opinion is an independent basis to reverse and remand the Commissioner's final decision.

**B.     RFC.**

Claimant maintains that the ALJ erred by failing to conduct a function-by-function analysis of Claimant's limitations prior to expressing an RFC assessment for medium level work.  Doc. No. 18 at 8-10.  This argument is unpersuasive, although, on remand, the ALJ will necessarily have to reconsider all of the evidence and reach a new RFC determination.  *See Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. Mar. 23, 2007) (unpublished) (while ALJ could have been more specific and explicit in describing limitations it was not error to find claimant could perform light level work after considering and discussing allegations and evidence); *Castel v. Commissioner of Social Security*, 355 Fed. Appx. 260, 263 (11th Cir. Nov. 30, 2009) (unpublished) (same).

C.      Other Impairments, Side-Effects of Medication, Credibility, and New Evidence.

On remand, the ALJ will have to re-evaluate the entire record, including all alleged impairments, side-effects of medication, new evidence, and the Claimant's credibility.  While authority exists for finding a credibility determination not supported by substantial evidence when an ALJ fails to properly evaluate medical opinion evidence, because the case must be remanded for the above-stated errors, it is unnecessary to determine whether the ALJ and/or Appeals Council also erred with respect to other alleged impairments, side-effects of medication, credibility, and new evidence.  *See Williams v. Astrue*, Case No. 3:10-cv-235-J-JBT, 2011 WL 721501 at *3 (M.D. Fla. Feb. 22, 2011) (finding credibility determination not supported by substantial evidence because the ALJ failed to properly evaluate consultative examiner's opinion and SSR 96-7p requires that the ALJ properly consider entire record when evaluating credibility)).[2]

II.     **REMEDY.**

Claimant requests reversal and a remand for an award of benefits.  Doc. No. 18 at 28. Reversal for an award of benefits is only appropriate either where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, or where the Claimant has suffered an injustice.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (disability beyond a doubt warrants award of benefits); *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Based on this record, the court cannot find that Claimant is disabled beyond a doubt or that Claimant has

[2] Claimant was unrepresented at the hearing, and the medical record contains evidence that Claimant suffered from side-effects of medication. R. 18-19, 121-122, 153, 162, 208, 221, 235, 260, 270, 276.  On remand, the ALJ should fully develop the record, illicit testimony, and articulate specific findings regarding Claimant's allegations of side-effects of medications and their impact on her ability to work. *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).

suffered an injustice.  Accordingly, it is recommended that a remand for further proceedings is appropriate.

**III.**   **CONCLUSION.**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.   **REVERSE** and **REMAND** the final decision for further proceedings pursuant to sentence four of Section 405(g);

2.   Enter judgment in favor of the Claimant and against the Commissioner; and

3.   Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on December 26, 2013.

THE HONORABLE PAUL A. ZOSS
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel

Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224